E-FILED
Wednesday, 20 June, 2018  02:14:16 PM
Clerk, U.S. District Court, ILCD

FILED

JUN 2 0 2018

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## AT PEORIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 18-*1003.2* |
| | ) | |
| TIMOTHY HERMAN, | ) | VIO:  Title 18, U.S.C., §§ 1341, 1343, |
| | ) | 1001 |
| Defendant. | ) | |
| | ) | |

### INDICTMENT

The Grand Jury charges:

### COUNTS 1 – 4
### (Mail Fraud)

#### Background

At all times material:

1.      A woman identified herein as Victim A resided in Peoria, IL.  Prior to her husband's death in 2012, Victim A's husband was a pastor at a Peoria-area church.  Through her attendance at that church, Victim A became friends with TIMOTHY HERMAN.

2.      HERMAN had ownership interests and bank accounts in the names of Delta Direct Connections, LLC (Delta Direct); Delta Properties, Inc.; Delta

Connections International, Inc.; Delta Community Companies, LLC, and; Augeo
Direct, LLC.

<u>Scheme to Defraud</u>

3.      Starting in or about 2013 and continuing to in or about December
2017, at Peoria, in the Central District of Illinois and elsewhere,

**TIMOTHY HERMAN,**

defendant herein, did knowingly engage in a scheme and artifice to defraud
Victim A and others and to obtain money and property by means of materially
false and fraudulent pretenses, representations, and promises.

4.       It was a part of the scheme that, HERMAN represented to Victim A
that he had been in the garbage business for several years and had been very
successful.  HERMAN did not tell Victim A that he had financial difficulties and
he was in default on his home mortgage. In truth and fact, Herman notified the
mortgage holder in May 2013 that he had not received a paycheck since May
2012 and had depleted his savings.

5.      It was further a part of the scheme that HERMAN represented to
Victim A that he had an opportunity which would earn her a greater return on
her money than she could earn from banks.

6.      It was further a part of the scheme that after Victim A told
HERMAN that she did not want to put her money into any long-term risky

investment, HERMAN assured Victim A that she would receive a return of eight percent and that her funds would not be at risk.

7.     It was further a part of the scheme that HERMAN represented that he would invest Victim A's money in a "Rewards Program" which Delta Direct was developing with Republic Services, a waste management company in Arizona.  HERMAN represented that he was going to retire in two years and expected a $17 million payout at that time.

8.     It was further a part of the scheme that after HERMAN represented the profitability and the safety of the funds, Victim A loaned Delta Direct $200,000.  HERMAN gave Victim A promissory notes dated January 20, 2014 and February 10, 2014.  HERMAN signed both notes as CEO of Delta Direct Connections, LLC.  Each of the notes promised repayment of the $200,000 with interest at the rate of eight percent per annum.  According to the notes, Victim A would receive payments of $9,045.46 per month until paid in full.  The January 20 note promised payment in full on or about January 20, 2017.  The February 10 note promised payment in full on or about February 20, 2016.

9.     It was further a part of the scheme that after HERMAN received Victim A's funds, HERMAN transferred funds amongst his various business accounts before transferring funds to his personal account.

10.     It was further a part of the scheme that, to avoid foreclosure on his

home, HERMAN used approximately $35,000 of Victim A's money to pay on the

delinquent mortgage.

11.     It was further a part of the scheme that HERMAN, in March, April

and May 2014, made the monthly $9,045.46 payments to Victim A, using Victim

A's money to make payments to her.

12.     It was further a part of the scheme that after receiving the monthly

payments, Victim A loaned another $250,000 to HERMAN, loaning HERMAN

$80,000 on or about May 29, 2014 and another $170,000 on or about June 2, 2014.

HERMAN re-wrote the earlier promissory notes to reflect the new total owed as

$422,864.25, with monthly payments of $10,323.35.  The note was dated May 27,

2014 and was to be paid in full on or about May 20, 2018.  The note was signed

by HERMAN as CEO of Delta Direct Connections, LLC.

13.     It was further a part of the scheme that after receiving the $170,000,

HERMAN used approximately $24,000 of Victim A's money to pay off a family

member's home mortgage.

14.     It was further a part of the scheme that after HERMAN made the

promissory note payments in June, July, August, and September 2014, Victim A

loaned HERMAN another $100,000.  HERMAN gave Victim A a new

promissory note dated September 25, 2014, reflecting the new total owed of

$542,545.46 and promising monthly payments of $13,245.12. The note was to be paid in full on or about September 20, 2018. Unlike the previous notes, HERMAN signed the note as CEO of Delta Community Companies, LLC.

15.    It was further a part of the scheme that HERMAN made a $13,245.12 payment to Victim A in October 2014. HERMAN did not make any further payments in 2014 nor did he make any in 2015. In 2016, Victim A received four payments totaling $10,000.

16.    It was further a part of the scheme that, even after failing to make the required payments to Victim A, HERMAN continued to falsely represent that he had invested the funds with Republic Services. HERMAN also agreed to provide an accounting of Victim A's funds. In truth and fact, HERMAN did not use the funds as represented and promised. Further, HERMAN never provided an accounting of the use of Victim A's funds.

17.    It was further a part of the scheme that HERMAN concealed from Victim A that he had not used her money as represented. In truth and fact, Herman used Victim A's funds to make payments to her, to make mortgage payments, to pay tax liens, to make marital settlement payments, and to otherwise convert Victim A's money to his own personal use and benefit.

18.     It was further a part of the scheme that to continue his deception and conceal his fraudulent conduct, HERMAN made false statements to others, including Victim A and federal law enforcement agents.

19.     It was further a part of the scheme that even after obtaining gainful employment, HERMAN did not make the promised payments to Victim A, despite his personal guarantee.

20.     As a result of the scheme and artifice to defraud, Victim A and others were defrauded of approximately $600,000.

<u>Mailings</u>

21.     On or about the below-listed dates, at Peoria, in the Central District of Illinois and elsewhere,

TIMOTHY HERMAN,

defendant herein, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, did knowingly cause to be delivered by mail according to the directions thereon, the below-described mail matter:

| Count | Date | Mail Matter |
|---|---|---|
| 1 | 8/22/16 | Envelope containing $4,000 check delivered to Peoria, IL |
| 2 | 11/12/16 | Envelope containing $2,500 check delivered to Peoria, IL |

| | | |
|---|---|---|
| 3 | 3/10/17 | Envelope containing $2,500 check delivered to Peoria, IL |
| 4 | 4/28/17 | Envelope containing $1,000 check delivered to Peoria, IL |

All in violation of Title 18, United States Code, Section 1341.

## COUNTS 5 - 13
### (Wire Fraud)

1.      The grand jury realleges and incorporates by reference the allegations set forth in paragraphs 1 - 20 of Counts 1 - 4 as if fully set forth herein.

### Wire Communications

2.      On or about each of the dates set forth below, in the Central District of Illinois and elsewhere,

TIMOTHY HERMAN,

defendant herein, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, did knowingly cause to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description |
|-------|------|-------------|
| 5 | 2/19/14 | Wire transfer of $35,003.50 from Busey Bank in Champaign to Seterus, Inc. in Tampa, FL |
| 6 | 3/11/14 | Wire transfer of $382.99 from Busey Bank in Champaign, IL to GLAIC in Lynchburg, VA |
| 7 | 6/3/14 | Wire transfer of $403.59 from Busey Bank in Champaign, IL to Erie Insurance in Erie, PA |
| 8 | 6/6/14 | Wire transfer of $5,000 from Busey Bank in Champaign, IL to Discover Card in Delaware |

| 9  | 6/11/14  | Wire transfer of $382.99 from Busey Bank in Champaign, IL to GLAIC in Lynchburg, VA |
| 10 | 9/4/14   | Wire transfer of $3,809.46 from Busey Bank in Champaign, IL to Seterus, Inc. in Beaverton, OR |
| 11 | 10/6/14  | Wire transfer of $3,809.46 from Busey Bank in Champaign, IL to Seterus, Inc. in Beaverton, OR |
| 12 | 10/7/14  | Wire transfer of $7,000 from Busey Bank in Champaign, IL to Discover Card in Delaware |
| 13 | 11/11/14 | Wire transfer of $382.99 from Busey Bank in Champaign, IL to GLAIC in Lynchburg, VA |

All in violation of Title 18, United States Code, Section 1343.

## COUNT 14
### (False Statement)

On or about December 29, 2017, in the Central District of Illinois,

TIMOTHY HERMAN,

defendant herein, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by telling a Special Agent of the Federal Bureau of Investigation (FBI) and a Postal Inspector with the United States Postal Inspection Service, among other false, fictitious and fraudulent statements that:

(1) he deposited Victim A's funds into her account and gave her the deposit ticket; whereas, in truth and fact, as he well knew, he deposited Victim A's funds into the Delta Direct Connections account;

(2) Victim A loaned him funds on two different occasions, once for $200,000 and once for $250,000, the occasions being about six to nine months apart; whereas, in truth and fact, Victim A loaned substantially more than he represented and more frequently than he represented;

(3) Victim A provided HERMAN with the funds in the form of checks payable to his business; whereas, in truth and fact, Victim A provided HERMAN with $300,000 in cash and $220,000 in cashier's checks, in addition to two checks, only one of which was payable to a business.

(4) he only used Victim A's funds for business expenses, such as payroll; whereas, in truth and fact, he used the funds for personal expenses;

(5) he only moved money between his companies and did not use any of the money to pay his mortgage; whereas, in truth and fact, he did use those funds for his mortgage.

In violation of Title 18, United States Code, Section 1001.

A True Bill,

s/Foreperson

s/Darilynn Knauss

Foreperson

JOHN E. CHILDRESS
*UNITED STATES ATTORNEY*

DJK/amr